*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## No. 23-CV-0719

WONDER TWINS HOLDINGS, LLC, APPELLANT,

V.

450101 DC HOUSING TRUST, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-000141-B)

(Hon. Robert R. Rigsby, Motions Judge)

(Argued October 3, 2024                    Decided November 21, 2024)

*Tracy L. Buck*, with whom *Ian G. Thomas* was on the brief, for appellant.

*Brian T. Gallagher* for appellee.

Before BECKWITH, EASTERLY, and SHANKER, *Associate Judges.*

EASTERLY, *Associate Judge*: This case concerns an action to quiet title of a condominium unit that was foreclosed upon twice by competing lien holders. Appellant Wonder Twins Holdings, LLC, purchased the property at the first foreclosure sale, conducted by the condominium association to recover unpaid assessments; months later, appellee 450101 DC Housing Trust purchased the

property at the second foreclosure sale, conducted by the lender that held the mortgage. The Superior Court granted summary judgment to DC Housing Trust on the grounds that the mortgage had been recorded earlier in time than the Trustee's Deed that Wonder Twins received and recorded upon purchase.

The Superior Court's ruling that DC Housing Trust held superior title to the property would be incorrect under a series of decisions issued by this court interpreting the Condominium Act as originally drafted. Specifically, this court has interpreted D.C. Code § 42-1903.13(a)(2) to create a super-priority lien, held by the condominium association, for the most recent six months of a unit owner's unpaid assessments, which, if foreclosed upon, extinguishes any other lien or mortgage, even if the condominium association advertised the foreclosure sale as subject to the first deed of trust or foreclosed on more than six months of unpaid assessments. *See Chase Plaza Condo. Ass'n*, *Inc. v. JPMorgan Chase Bank, N.A.*, 98 A.3d 166 (D.C. 2014)*; Liu v. U.S. Bank Nat'l Ass'n*, 179 A.3d 871 (D.C. 2018); *4700 Conn 305 Tr. v. Capital One, N.A.*, 193 A.3d 762 (D.C. 2018). But in 2017 the Council for the District of Columbia amended D.C. Code § 42-1903.13 and added, inter alia, subsection (c), which addresses how condominium foreclosure sales must be conducted. Among these new procedural requirements, subsection (c)(4)(B)(ii) requires a condominium association conducting a foreclosure sale to provide the unit owner with notice prior to sale that states that the foreclosure sale is either (1) for

the statutory six-month priority lien and not subject to the first deed of trust, or (2) for more than the statutory six-month priority lien and subject to the first deed of trust. D.C. Code § 42-1903.13(c)(4)(B)(ii).  We now consider whether this amendment has legislatively overruled, at least in part, our decisions interpreting the Condominium Act.

We reaffirm our holdings in *Chase Plaza* and *Liu* that the most recent six months of unpaid condominium assessments constitute a super-priority lien, and that a condominium association foreclosing on only that six-month portion extinguishes any deed of trust, regardless of the asserted terms of the sale.  As for our holding in *4700 Conn,* we reaffirm only in part.  Specifically, we adhere to the understanding that, regardless of the amount foreclosed upon, a condominium association retains its super-priority lien status on the most recent six-month portion for the purposes of payment priority under the Condominium Act, meaning that the condominium association will be paid before any other creditors for the most recent six months of assessments.  But when a condominium association forecloses on its super-priority lien *and* its subordinate lien for more than six months of unpaid assessments, we hold that the amended Act now requires—in contravention of *4700 Conn*—the preservation of the first deed of trust.

This holding alone does not answer the question of which party in this case has superior title. Notably, the record does not reflect whether the condominium association foreclosed only on its super-priority lien or on a split lien consisting of both the super-priority and subordinate portions of its lien. Even if the condominium association did foreclose on a split lien, that would only mean that Wonder Twins purchased the property subject to the first deed of trust, and such a purchase would not resolve whether DC Housing Trust gained a superior claim to title when it subsequently purchased the property pursuant to a judicial foreclosure action to which Wonder Twins was never made a party. Accordingly, we reverse the grant of summary judgment and remand this case to the Superior Court.

## I.  The Pertinent Provisions of the Condominium Act

When a unit owner fails to pay their condominium assessments, the Condominium Act grants the condominium association a lien against the unit. D.C. Code § 42-1903.13(a). The statute provides that this lien is "prior to any other lien or encumbrance except" for, among other things, a first deed of trust. *Id.* § 42-1903.13(a)(1). But the statute also grants the condominium association a super-priority lien, prior even to the first deed of trust, for condominium assessments "which would have become due in the absence of acceleration during the 6 months immediately preceding institution of an action to enforce the lien or recordation of a

memorandum of lien." *Id.* § 42-1903.13(a)(2). As we explained in *Chase Plaza*,

> the Act [thus] effectively splits condominium-assessment liens into two liens of differing priority: (1) a lien for six months of assessments that is higher in priority than the first mortgage or first deed of trust . . . and (2) a lien for any additional unpaid assessments that is lower in priority than the first mortgage or first deed of trust.

98 A.3d at 173.

In *Chase Plaza*, this court considered "what happens when . . . a condominium association forecloses solely on its super-priority lien and the proceeds of the sale are not sufficient to pay off a first deed of trust." *Id.* Applying the "general principle of foreclosure law" that "liens with lower priority are extinguished if a valid foreclosure sale yields proceeds insufficient to satisfy a higher-priority lien," *id.*, and looking to the Act's stated purpose of giving "condominium 'associations the maximum flexibility in collecting unpaid condominium assessments,'" *id.* at 174 (quoting D.C. Council, Report on Bill 8-65, at 3 (Nov. 13, 1990)), we determined that a condominium foreclosure sale extinguishes the first deed of trust in that context, *id.* at 175.

In 2018 this court decided two additional cases—*Liu*, 179 A.3d 871, and *4700 Conn*, 193 A.3d 762—that further clarified the relationship between condominium foreclosures and first deeds of trust.

In *Liu*, we held that under the Condominium Act's anti-waiver provision, D.C. Code § 42-1901.07, "any attempt by a condominium association or a holder of a first mortgage or deed of trust to have a condominium association's super-priority lien waived or varied by contract is invalid, as a matter of law." 179 A.3d at 879. In that case the condominium association had only sought to foreclose on the most recent six months of unpaid assessments, but "the sale's advertisement, the auctioneer's statements at the sale, the Memorandum of Purchase . . . , and the Trustee's Deed" all indicated that the unit was sold "subject to the deed of trust." *Id*. at 878 (alterations omitted); *see also id.* at 875. This court held that these statements had no legal force and that the first deed of trust "must be considered effectively extinguished" by the foreclosure on the six-month super-priority lien "if the proceeds of the sale are insufficient to cover the first deed of trust." *Id.* at 879. We noted that we were "not stating that a foreclosing condominium association is required to foreclose pursuant to its super-priority lien," but that where the condominium association "collected on only the most recent six months of unpaid assessments, we [we]re satisfied that [it] enforced its super-priority lien at the sale." *Id.*

Then, in *4700 Conn*, we considered for the first time the implications of a condominium association foreclosing on more than the super-priority portion of its lien. In that case, the mortgage lender argued that the condominium association was

entitled to the super-priority lien described in subsection (a)(2) "only *if* . . . the foreclosure sale seeks recovery of the most recent six months' arrearage; but if it seeks to recoup more in assessments owed, the super-priority is lost" and the entirety of the association's lien is considered junior to the first deed of trust. *4700 Conn*, 193 A.3d at 765. We disagreed, concluding that such a reading "engrafts a limitation on subsection 13(a)(2) that its language will not bear." *Id.* Instead, we reiterated our position in *Chase Plaza* that "the statute 'effectively splits condominium-assessment liens into two liens of differing priority,'" and we held that this split lien "dictates how the proceeds of a sale to recover the most recent six months' and additional assessments will be distributed, but reflects no intent to nullify the super-priority lien just because both liens are enforced in the same sale." *Id.* (quoting *Chase Plaza*, 98 A.3d at 173). We concluded that "[t]he net result of this analysis, in keeping with *Chase Plaza* and *Liu*, [was] that the [condominium] [a]ssociation's enforcement of its super-priority lien by foreclosure sale of the [u]nit . . . extinguished [the] first deed of trust." *Id.* at 766.

Meanwhile, in 2017, after this court issued its decision in *Chase Plaza*, the D.C. Council amended the Condominium Act. Condominium Owner Bill of Rights and Responsibilities Amendment Act of 2016, D.C. Law 21-241, § 2, 64 D.C. Reg. 1602 (2017). The Council left section 42-1903.13(a) (defining the priority of condominium liens) unchanged. *See id.* But it added, among other provisions, new

procedural requirements for foreclosure sales, including subsection (c)(4)(B)(ii), which dictates one of two forms of notice the condominium association must deliver to the unit owner and record. Specifically, the condominium association's "Notice of Foreclosure Sale" must

> Expressly state that the foreclosure sale is for either:
>
> (I) The 6-month priority lien as set forth in subsection (a)(2) of this section and not subject to the first deed of trust; or
>
> (II) More than the 6-month priority lien set forth in subsection (a)(2) of this section and subject to the first deed of trust.

D.C. Code § 42-1903.13(c)(4)(B)(ii). The legislative history of the 2017 amendment to the Condominium Act contains no commentary about this provision. *See generally* Report on B21-0443 before the Committee on Housing and Community Development, Council of the District of Columbia (Oct. 14, 2016). Though the amendment preceded our decisions in *Liu* and *4700 Conn*, we declined to consider its implications in either of those cases, both of which involved foreclosure sales that took place prior to 2017. *See Liu*, 179 A.3d at 874 & n.2; *4700 Conn*, 193 A.3d at 766. Thus, this case presents our first opportunity to interpret this new provision. *See infra* part III.

## II. Factual and Procedural Background

Mark Taylor, owner of the condominium at 450 Condon Terrace SE, Unit

101, defaulted on his mortgage and fell behind on his condominium assessments. In December 2016, the mortgage lender[1] filed an action for judicial foreclosure against Mr. Taylor. In August 2017, while the lender's action was still pending, the condominium association held a foreclosure sale to enforce its lien for Mr. Taylor's unpaid assessments. *See* D.C. Code § 42-1903.13(c)(1) (granting condominium associations "the power of sale to enforce a lien for an assessment . . . [that] is past due").

The record does not reflect whether the condominium association foreclosed on only the most recent six months of unpaid assessments, for which it held a super-priority lien, or more than that amount, for which it held a split lien. *See Chase Plaza*, 98 A.3d at 173. Wonder Twins asserts in its brief to this court that it is "undisputed" that "the Condo Lien consisted of more than six months of assessments owed to the Association" and that "[t]he Notice of Condo Lien and Notice of Condo Sale demonstrate that the Association was foreclosing on its Condo Lien that encompassed over two years' worth of unpaid assessments." These statements are curious, because the amount the condominium association foreclosed upon does not appear to have been discussed in Superior Court. Most notably, D.C. Housing Trust

---

[1] Following Mr. Taylor's initial purchase of the condo, the deed of trust was assigned multiple times to different entities. We use the term "mortgage lender" to refer to the initial mortgage lender and its successors.

did not assert in its statement of undisputed facts that the condominium association had foreclosed on more than six months of unpaid assessments when it moved for summary judgment. *See McKenney v. Washington Metro. Area Transit Auth.*, 318 A.3d 559, 564 (D.C. 2024) (quoting *Tolu v. Ayodeji*, 945 A.2d 596, 600 (D.C. 2008)) (explaining the moving party bears the "burden of demonstrating that there [wa]s no genuine issue of material fact and that [it was] entitled to judgment as a matter of law"). Furthermore, the record materials in this case do not contain the condominium association's Notice of Lien or its Notice of Sale, nor do they contain any specific description of the contents of either notice.[2] The record does establish

---

[2] Wonder Twins invites us to take judicial notice of both the Notice of Condominium Sale and the Notice of Condominium Lien, though it fails to provide us with copies of the documents, which are not readily accessible to the court. As a general matter, "[a]ppellate courts do not take evidence and are bound to review a case based on the record developed by the parties in the trial court." *Nichols v. First Union Nat'l Bank*, 905 A.2d 268, 273 n.7 (D.C. 2006); *see also* D.C. App. R. 10(a) (limiting the record on appeal to "all documents and exhibits filed in the Superior Court," "the transcript of proceedings," and "a certified copy of the docket entries"). While judicial notice may be taken on appeal, *see, e.g.*, *Christopher v. Aguigui*, 841 A.2d 310, 311 n.2 (D.C. 2003) (judicial notice of prior court proceedings); *Torney v. United States*, 300 A.3d 760, 782 n.21 (D.C. 2023) (judicial notice of statute), "this court has expressed skepticism about taking judicial notice of facts that were not presented to or judicially noticed by the trial court or . . . of proffered facts whose relevance depends on other factual development or vetting," *Mejia-Cortez v. United States*, 256 A.3d 210, 215-16 (D.C. 2021). Because it is unclear whether these records would in fact resolve which portion(s) of its lien the condominium association foreclosed upon (Wonder Twins asserts that the record reflects that the lien consisted of more than six months of assessments owed, but not whether the

that Wonder Twins, the highest bidder at the sale, purchased the property for $13,000 and recorded a Trustee's Deed.

A short time later, the Superior Court entered a default judgment for the mortgage lender in its action against Mr. Taylor—who had never answered the complaint—and entered a decree for the sale of the property. Wonder Twins was not a party to this foreclosure action, though it was apparently notified of the impending sale. DC Housing Trust purchased the property for $80,000 at the court-ordered sale, which took place in January 2018, and subsequently recorded its own Trustee's Deed.

DC Housing Trust filed suit against Wonder Twins in Superior Court for, among other things, declaratory judgment and to quiet title. DC Housing Trust eventually moved for summary judgment, which the court granted. At the outset of its analysis granting the motion, the court quoted from a portion of the Condominium Act explaining that a lien on unpaid assessments is prior to other liens or encumbrances except a mortgage or first deed of trust, D.C. Code § 42-1903.13(a)(1), but did not acknowledge that the very next subsection, (a)(2), creates an exception to that exception for the most recent six months of

association foreclosed on the entirety of the lien), we decline to take judicial notice of records we have not even been provided.

condominium assessments, thereby giving rise to a super-priority lien. *See Chase Plaza*, 98 A.3d at 173; *see also supra* Part I. The court then jumped to D.C. Code § 42-1903.13(c)(4)(B) and recited the new notice requirements for condominium foreclosure sales, but it did not explain how that provision interacted with subsection (a)(2) or this court's case law interpreting that super-priority lien provision. Instead, seemingly relying solely on subsection (a)(1), the court ruled that DC Housing Trust had superior title because the lender's first deed of trust was recorded in 2007, years prior to Wonder Twins's Trustee's Deed from the condominium foreclosure sale. In addition, seemingly referring to the auctioneer's advertisement for the foreclosure sale—not the actual, recorded Notice of Foreclosure Sale referenced in D.C. Code § 42-1903.13(c)(4)(B), which was not made part of the record, *see supra*—the court observed that "as to the notice portion" of the Condominium Act, "it appears that the condo foreclosure sale specifically stated, 'the property will be sold subject to any prior liens.'" Lastly, the court rejected Wonder Twins's argument that it had superior title under this court's decisions in *Liu* and *4700 Conn*, observing without further explication that these cases had not interpreted the 2017 amendment to the Condominium Act and, "[t]herefore, neither of these cases [is] controlling." This timely appeal followed.

### III.   Analysis

We review the Superior Court's grant of summary judgment and any embedded issue of statutory interpretation de novo.  *Chase Plaza*, 98 A.3d at 172.  We begin our analysis with our understanding of the effect of the 2017 amendment to the Condominium Act on our decisions in *Chase Plaza*, *Liu*, and *4700 Conn*.  We review the relevant text of the statute not only "according to [its] ordinary sense and plain meaning," *id.* (quoting *O'Rourke v. D.C. Police & Firefighters' Ret. & Relief Bd.,* 46 A.3d 378, 383 (D.C. 2012)), but also "as a whole," giving the statute's provisions, to the best of our ability, "a sensible construction . . . that w[ill] not work an obvious injustice," *id.* (quoting *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship*, 869 A.2d 329, 332 (D.C. 2005)).  We then examine the Superior Court's ruling that DC Housing Trust possessed superior title to the subject property.

### A.   The Effect of the 2017 Amendment on *Chase Plaza* and Its Progeny

Looking first to D.C. Code § 42-1903.13(a)(2), the text is the same as it was when we examined it in *Chase Plaza*.  It still states that a condominium

> lien shall also be prior to a mortgage or deed of trust described in [(a)(1)] . . . , to the extent of the common expense assessments based on the periodic budget adopted by the unit owners' association which would have become due in the absence of acceleration during the 6 months immediately preceding institution of an action to enforce the lien . . . by the unit owners' association.

D.C. Code § 42-1903.13(a)(2). As we explained in *Chase Plaza* and *Liu*, this language creates a super-priority lien for six months of unpaid assessments that, when examined in conjunction with the anti-waiver provision of D.C. Code § 42-1901.07, cannot be circumvented, and that when foreclosed upon extinguishes the first deed of trust. *Chase Plaza*, 98 A.3d at 173, 175; *Liu*, 179 A.3d at 879.

But D.C. Code § 42-1903.13(c)(4)(B) is new. This provision—falling within subparagraph (c), which addresses how and when a condominium association may foreclose on its lien—now requires a condominium association to deliver to the unit owner and record a Notice of Foreclosure Sale of Condominium Unit for Assessments Due that specifies either that the foreclosure sale is for (1) "[t]he 6-month priority lien as set forth in subsection (a)(2) of this section and not subject to the first deed of trust," or (2) "[m]ore than the 6-month priority lien set forth in subsection (a)(2) of this section and subject to the first deed of trust." D.C. Code § 42-1903.13(c)(4)(B)(ii). Although subsection (c)(4)(B)(ii) is ostensibly about the notice a condominium association must provide, we see no other sensible reading of this subsection than that it constrains how a condominium association may foreclose on a property and requires that a first deed of trust survive a foreclosure sale when a condominium association seeks to enforce a lien for more than six months of unpaid assessments. Indeed, it would make little sense to require condominium associations to give notice that a foreclosure sale is "subject to" the first deed of trust—i.e., notice

that the property remains encumbered and the buyer is thus bound to make payments[3]—if that were not in fact the case. *Cardozo v. United States*, 315 A.3d 658, 672 (D.C. 2024) ("When one possible interpretation 'would lead to absurd consequences which the legislature could not have intended,' we reject it." (quoting *James Parreco & Son v. D.C. Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C. 1989))).[4]

Admittedly, interpreting D.C. Code § 42-1903.13(c)(4)(B)(ii) in this manner compels a partial shift from the "general principle of foreclosure law" acknowledged

---

[3] "One who purchases at a mortgage-foreclosure sale, subject to a prior mortgage, stands in the same position as if he or she had taken a deed to the land from the owner, subject to the prior mortgage. In other words, he or she takes it charged with primary liability for the payment of the prior mortgage." 55 Am. Jur. 2d *Mortgages* § 685 (2024) (footnotes omitted); *see also Yasuna v. Miller*, 399 A.2d 68, 73 (D.C. 1979) (a property that is "subject to" a mortgage "bears the principal burden of the mortgage"); *Chase Plaza*, 98 A.3d at 172 ("[A]s a general rule, we presume that where a legislature adopts a term of art, it knows and adopts the cluster of ideas that were attached to each borrowed word." (alteration in original) (quoting *Doe No. 1 v. Burke,* 91 A.3d 1031, 1041 (D.C. 2014))).

[4] As a general matter, this court may "look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Booz Allen Hamilton Inc. v. D.C. Off. of Tax & Revenue*, 308 A.3d 1205, 1209 (D.C. 2024) (quoting *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022)). DC Housing Trust asserts in its brief that "[t]he impetus for the 2017 Amendments stem[s] from the confusion that arose surrounding the impact of condominium foreclosures on prior recorded deeds of trust." But it cites to no applicable authority for this proposition, and we are aware of no legislative history that sheds light on the reason(s) the Council added subsection (c)(4)(B)(ii) to the Condominium Act.

in *Chase Plaza* that "liens with lower priority are extinguished if a valid foreclosure sale yields proceeds insufficient to satisfy a higher-priority lien." 98 A.3d at 173. When a condominium association seeks to foreclose only on its super-priority lien, this common law principle remains in force. But when a condominium association seeks to foreclose on both its super-priority lien and its subordinate lien, D.C. Code § 42-1903.13(c)(4)(B)(ii) supplants the common law principle and permits the subordinate first deed of trust to survive a foreclosure sale upon the condominium association's super-priority lien, even if foreclosure proceeds are insufficient to satisfy the first deed of trust. This holding overrules *4700 Conn* to the extent it held that any first deed of trust will be extinguished in this circumstance if the proceeds of the foreclosure are insufficient to satisfy the deed of trust.[5] Although "no statute should be construed as altering the common law, farther than its words import," *Chase Plaza*, 98 A.3d at 172 (alteration omitted), we conclude the words of (c)(4)(B)(ii) are sufficiently clear to compel this result.

We do not, however, understand D.C. Code § 42-1903.13(c)(4)(B)(ii), to alter

---

[5] Our interpretation of subsection (c)(4)(B)(ii) also represents a departure from the uniform code upon which the District's statute was based. *See Chase Plaza*, 98 A.3d at 174-75; Uniform Common Interest Ownership Act § 3–116, cmt. 2 (2021) (clarifying that an association's super-priority lien has "true lien priority" rather than "merely a payment priority"); *see also id.* Illustration 1 (describing a split lien scenario extinguishing a mortgage lien).

our conclusion in *4700 Conn* that a condominium association foreclosing on more than six months of assessments retains its super-priority status with respect to *payment* priority under subsection (a)(2). *See 4700 Conn*, 193 A.3d at 765 (recognizing (a)(2) creates a split lien); *Chase Plaza*, 98 A.3d at 173 (same). All that changes with the addition of (c)(4)(B)(ii) is that the first deed of trust survives a foreclosure sale on more than six months of unpaid assessments.

## B. The Superior Court's Ruling That DC Housing Trust Possesses Superior Title to the Subject Property

Turning to the Superior Court's summary judgment order, we hold that the court erred in ruling that DC Housing Trust has superior title because the lender's first deed of trust was recorded before Wonder Twins's deed granting it ownership from the condominium foreclosure sale. The court appeared to rely on D.C. Code § 42-1903.13(a)(1), which does state that a condominium lien is generally subordinate to a first deed of trust. But under the amended law, as under the law as originally enacted, a condominium association possesses a super-priority lien for six months of unpaid assessments under subsection (a)(2). And if the condominium association foreclosed on only that super-priority lien, then, as explained above, the foreclosure sale extinguished the bank's first deed of trust.

So too did the Superior Court err in suggesting that the condominium

association waived its super-priority status because the auctioneer advertised the sale as "subject to any prior liens, encumbrances, and/or municipal assessments." With respect to foreclosure only on a six-month super-priority lien, this court's application in *Liu* of the anti-waiver provision in D.C. Code § 42-1901.07 still holds, and a foreclosure sale will still extinguish the first deed of trust regardless of how it was advertised. *See* 179 A.3d at 879. And with respect to foreclosures on more than six months of assessments, our holding today makes clear that the sale *must* be made subject to the first deed of trust. Thus, the advertised language is not the relevant consideration; the question is whether the condominium association foreclosed on just its six-month super-priority lien or both its six-month super-priority lien and any subordinate lien.[6]

---

[6] Wonder Twins devotes a significant portion of its brief to arguing that it is a bona fide purchaser and DC Housing Trust is not. These arguments are unhelpful. A bona fide purchaser is "one who acquired interest in a property for valuable consideration and *without notice of any outstanding claims* which are held against the property by third parties, and thus is protected from outstanding interests in the property of which it had no notice." *Smith v. Wells Fargo Bank*, 991 A.2d 20, 26 (D.C. 2010) (internal citation, alterations, and quotation marks omitted) (emphasis added) (quoting *Clay Props., Inc. v. Washington Post Co.,* 604 A.2d 890, 894 (D.C. 1992)). The recording of a claim "operates as constructive notice to all purchasers," and "[t]he purchaser must therefore make his own investigation and determine what liens or encumbrances may exist against the property prior to turning over his deposit." *Stuart v. Am. Sec. Bank*, 494 A.2d 1333, 1338 (D.C. 1985).

The record before us does not provide an answer to that question, *see supra* Part II, which leads us to conclude that the Superior Court's ruling on DC Housing Trust's action to quiet title was based on incomplete information and analysis. If the condominium association foreclosed on only its six-month, super-priority lien, then per *Chase Plaza* and *Liu*, the bank's deed of trust was extinguished and Wonder Twins holds title to the property free and clear of any encumbrances. *See supra* Part III.A. If, on the other hand, the condominium association foreclosed on more than six months' worth of arrearage, then per D.C. Code § 42-1903.13(c)(4)(B)(ii), the deed of trust survived the foreclosure sale and remained an encumbrance on the property notwithstanding Wonder Twins' purchase. *See supra* Part III.A.

Further, even if Wonder Twins purchased the property subject to the first deed of trust, the undisputed fact remains that Wonder Twins became the record owner of the property. But it appears that when the bank foreclosed on the property it named only Mr. Taylor, the original mortgage holder, and did not name Wonder Twins.

---

Wonder Twins cannot claim to be a bona fide purchaser because it was on notice of the mortgage lender's first deed of trust, which was recorded prior to the condominium foreclosure sale. And Wonder Twins's argument that DC Housing Trust *cannot* be a bona fide purchaser because it purchased the property with notice of Wonder Twins's record ownership is largely beside the point. DC Housing Trust does not argue that it has superior title because it was a bona fide purchaser; it argues that it has superior title because it purchased the property through a lender's valid foreclosure on a mortgage that had priority over other liens.

This raises questions about the validity of the bank's foreclosure sale and thus of DC Housing Trust's purchase of the property. *See EMC Mortg. Corp. v. Patton*, 64 A.3d 182, 188 (D.C. 2013) ("It is well settled, both in this jurisdiction and others, that a holder of an interest in real property is indispensable when a judgment could destroy or substantially impair the interest at issue.").

Given these legal and factual uncertainties, we must reverse the court's summary judgment ruling. *See Chase Plaza*, 98 A.3d at 172 (explaining that we will uphold the Superior Court's summary judgment order only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law" (quoting *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014))); *see also Archie v. U.S. Bank, N.A.*, 255 A.3d 1005, 1022 n.17 (D.C. 2021) ("[I]n order to prevail on a quiet title claim, a claimant must establish title to the property that is superior to any claim by the adverse party.").

\*　　　\*　　　\*

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered*.